UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SELECTIVE SERVICE SYSTEM,<br>UNITED STATES,<br><br>                    Defendant. | Case No. 23-cv-02403-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 28 |

Before the Court is Defendant Selective Service System's ("Selective Service") motion to dismiss. ECF No. 28. The Court will grant the motion.

## I.    BACKGROUND

Under the Military Selective Service Act ("MSSA"), 50 U.S.C. § 3801, all male citizens and residents of the United States between the ages of 18 and 26 are required to register with the Selective Service System. 50 U.S.C. §§ 3802(a), 3809. Males who do not register or otherwise comply with MSSA requirements may be subject to penalties or denied federal benefits. 50 U.S.C. §§ 3811(a), (f). The Act does not require women to register. 50 U.S.C. § 3802(a).

Pro Se Plaintiff Jane Doe brings this action on behalf of her minor son, John Doe. ECF No. 1 at 1. John Doe "was assigned male at birth and is being forced to register" under the MSSA. *Id.* ¶ 18. John Doe alleges that he has been diagnosed with obsessive-compulsive disorder ("OCD"), and has a medical history of anxiety, psychosis, suicidality, and self-harm that disqualify him from military service. *Id.* ¶¶ 13–15. He alleges that the MSSA's requirement that male citizens and residents of the United States between the ages of 18 and 26 register with the Selective Service System, including disabled males, violates the Fifth Amendment of the Constitution. *Id.* ¶¶ 19, 25, 29. Plaintiffs seek injunctive and declaratory relief excusing John

1    Doe, males with OCD, and all males from registering with the Selective Service.  *Id.* at 11–12.

2         The Selective Service now moves to dismiss each of Plaintiffs' Fifth Amendment Claims

3    pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 28.

4    **II.    JURISDICTION**

5         The Court has jurisdiction under 28 U.S.C. § 1331.

6    **III.    LEGAL STANDARD**

7         **A.    Rule 12(b)(6)**

8         "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

9    legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela*

10   *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a motion to dismiss, "a

11   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

12   plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

13   *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

14   factual content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged."  *Id.*  In determining whether a plaintiff has met the plausibility

16   requirement, a court must "accept all factual allegations in the complaint as true and construe the

17   pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068,

18   1072 (9th Cir. 2005).

19        **B.    Rule 12(b)(1)**

20        "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

21   'Controversies.'"  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  "One component of the case-or-

22   controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar

23   elements of injury in fact, causation, and redressability."  *Id.* (citing *Lujan v. Defenders of*

24   *Wildlife*, 504 U.S. 555, 560–61 (1992)).  A defendant may attack a plaintiff's assertion of

25   jurisdiction by moving to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil

26   Procedure.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also* 5B Charles

27   Alan Wright & Arthur Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) ("A motion to

28   dismiss an action under Federal Rule 12(b)(1) . . . raises the fundamental question whether the

United States District Court
Northern District of California

2

federal district court has subject matter jurisdiction over the action before it.")

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  Where, as here, a defendant makes a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).  A court addressing a facial attack must confine its inquiry to the allegations in the complaint.  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citations omitted).

### C.       Leave to Amend

Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision of whether to grant leave to amend is "within the discretion of the district court, which may deny leave due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.     DISCUSSION

### A.       Standing

The Selective Service argues that Plaintiffs "fail to explain how they meet the requirements for Article III standing."  ECF No. 28 at 13 n.4; *see* ECF No. 36 at 6–7.  Specifically, the Selective Service argues that John Doe is a "'minor,'" and is "thus not yet required to register with the Selective Service," ECF No. 28 at 13 n.4. (quoting ECF No. 1 at 1), and that Plaintiffs "fail to allege any particularized harm suffered as a result of the registration requirement they challenge," ECF No. 28 at 13 n.4.  In response, Plaintiffs aver, without any further support, that they "have

United States District Court
Northern District of California

1   standing to bring claims."  ECF No. 31 at 5.  While the Selective Service only raised this argument

2   in a footnote in its motion and in its reply brief, every court "has a special obligation to 'satisfy

3   itself . . . of its own jurisdiction.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)

4   (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).  Therefore, the Court considers the

5   threshold question of whether John Doe satisfies the demands of Article III.

6          Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2)

7   that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

8   redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016).

9   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

10  protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

11  hypothetical.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  While "imminence is concededly a

12  somewhat elastic concept[,] it cannot be stretched beyond its purpose, which is to ensure that the

13  alleged injury is not too speculative for Article III purposes—that the injury is certainly

14  impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations and internal

15  quotations omitted).

16         "The constitutional component of the ripeness inquiry is often treated under the rubric of

17  standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong."

18  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

19  "When addressing the sufficiency of a showing of injury-in-fact grounded in potential future

20  harms, Article III standing and ripeness issues often 'boil down to the same question.'"  *Coons v.*

21  *Lew*, 762 F.3d 891, 897 (9th Cir. 2014), *as amended* (Sept. 2, 2014) (quoting *Susan B. Anthony*

22  *List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)).  "In that context, 'ripeness can be characterized as

23  standing on a timeline,' and the analysis for both standing and ripeness is essentially the same."

24  *Coons*, 762 F.3d at 897 (quoting *Thomas*, 220 F.3d at 1138).

25          Read generously, Plaintiffs' complaint suggests that John Doe is at least 15 years old and

26  will be required to register with the MSSA within three years.  ECF No. 1 ¶ 16.  Further, unlike

27  cases such as *Clapper*, where "respondents merely speculate[d] and [made] assumptions about

28  whether their communications with their foreign contacts [would] be acquired under" the statute at

1    issue, John Doe is certain to violate the MSSA should he fail to register upon turning 18, which is

2    inevitable. *Clapper*, 568 U.S. at 412. Finally, it would be counterintuitive to force John Doe to

3    actually violate the MSSA in order to confer standing. *See id.* at 409 (quoting *Whitmore v.*

4    *Arkansas*, 495 U.S. 149, 158 (1990)) ("[W]e have repeatedly reiterated that 'threatened injury

5    must be certainly impending to constitute injury in fact," and that '[a]llegations of *possible* future

6    injury' are not sufficient."). Thus, while Plaintiffs' allegations concerning standing could have

7    been clearer, they nonetheless pass muster. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

8    (discussing the lower standard for pro se plaintiffs, namely that they are held to "less stringent

9    standards" with respect to pleadings).

10      In sum, Plaintiffs have adequately alleged standing. The Court next addresses the merits

11    of Plaintiffs' claims.

12            **B.**       **Disability-Based Equal Protection Challenges**

13      Plaintiffs bring two claims under the Due Process Clause of the Fifth Amendment on the

14    basis of John Doe's disability status. First, they aver that the Selective Service "discriminates

15    against sufferers of [OCD], as a class, by denying them an exemption from registration when

16    females, a similarly situated class, receive an exemption." ECF No. 1 ¶ 19. Second, they contend

17    that the Selective Service "discriminates against [John Doe], as a class of one, by denying [him] an

18    exemption from registration when females, a similarly circumstanced class, receive an

19    exemption." *Id.* ¶ 25. The Selective Service argues that both these challenges fail to state a claim

20    upon which relief can be granted. ECF No. 28 at 13–16.

21      "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

22    'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

23    direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

24    *Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

25    "Analysis of an equal protection claim alleging an improper statutory classification involves two

26    steps. Appellants must first show that the statute, either on its face or in the manner of its

27    enforcement, results in members of a certain group being treated differently from other persons

28    based on membership in that group." *United States v. Lopez–Flores*, 63 F.3d 1468, 1472 (9th Cir.

1995).  "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified."  *Id.*

Plaintiffs' claims fail at the first step because neither John Doe, nor the class of persons who suffer from OCD, are being "treated differently from other persons based on membership in that group."  *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 1999) (citation omitted).  The MSSA treats disabled and non-disabled males alike.  As the Selective Service points out, John Doe "demand[s] that the government treat [him] differently based on his disability status, when in fact the Selective Service System treats him the same as any non-disabled male with regard to the registration requirement he challenges."  ECF No. 28 at 14.  Thus, Plaintiffs' equal protection claims on the basis of disability necessarily fail.

Plaintiffs' argument that females and disabled males are similarly situated for purposes of the equal protection analysis is unpersuasive.  *See* ECF No. 31 at 6.  Deferments on a disability basis, unlike deferments on the basis of sex, "'turn on the resolution of factual questions.'"  *United States v. Schmucker*, 815 F.2d 413, 419 (6th Cir. 1987) (quoting *McGee v. United States*, 402 U.S. 479, 490 (1971)).[1]  As set forth in 32 C.F.R. § 1633.4, registrants seeking a deferment of exemption from service based on disability are "entitled to present all relevant written information which he believes to be necessary to assist the classifying authority in determining his proper classification; such information may include documents, affidavits, and depositions."  *See also* 32 C.F.R. § 1633.3 ("no file relating to a registrant's possible classification status will be established prior to that registrant being ordered to report for induction.").  The Court therefore agrees with the Selective Service that "Plaintiffs' identified class (disabled individuals) is not being treated differently than females 'based on membership in that group.'"  ECF No. 36 at 9 (quoting *McLean*, 173 F.3d at 1185) (emphasis omitted).

In sum, Plaintiff's equal protection challenges on the basis of disability are dismissed.

---

[1] To the extent this argument raises an equal protection violation on the basis of sex, the Court addresses that argument below.  *See infra* at 5.

United States District Court
Northern District of California

1    Because amendment would be futile, these claims are dismissed with prejudice.  *See Leadsinger,*

2    *Inc.*, 512 F.3d at 532.

3        **C.    Sex-Based Equal Protection Challenges**

4        The Court next turns to Plaintiff's claim that the Selective Service discriminates against

5    males, as a class, in violation of the Fifth Amendment by denying them an exemption from

6    registration "when females, a similarly circumstanced class, receive an exemption."  ECF No. 1 ¶

7    29.  Plaintiff argues that since the "ban on women in combat" was officially rescinded in 2013,

8    women and men should be considered "similarly situated for purposes of a draft or registration for

9    a draft."  *Id.* ¶¶ 33, 35; *see* ECF No. 31 at 10–12.  The Selective Service responds that this

10   argument is foreclosed by *Rostker v. Goldberg*, 453 U.S. 57 (1981).  *See* ECF No. 36 at 11–13.

11   For the reasons set forth below, the Court agrees with the Selective Service.

12       In *Rostker*, the Supreme Court determined that the male-only Selective Service

13   requirement did not violate due process.  453 U.S. 57 at 71.  Drawing on legislative history, the

14   Court reasoned that the purpose of the "registration scheme" is to serve "as a prelude to a draft in a

15   time of national emergency."  *Id.* at 75.  At the time the Supreme Court decided *Rostker*, women

16   were barred from combat.  *See id.* at 76 ("Women as a group, however, unlike men as a group, are

17   not eligible for combat.").  Accordingly, the Supreme Court concluded that "[t]his is not a case of

18   Congress arbitrarily choosing to burden one of two similarly situated groups, such as would be the

19   case with an all-black or all-white, or an all-Catholic or all-Lutheran, or an all-Republican or all-

20   Democratic registration.  Men and women, because of the combat restrictions on women, are

21   simply not similarly situated for purposes of a draft or registration for a draft."  *Id.* at 78.

22       Plaintiffs contend that the Court should decline to follow the reasoning of *Rostker* because

23   stare decisis need not apply where "'there may be factual differences between the current case and

24   the earlier one.'"  ECF No. 31 at 10 (quoting *Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir.

25   2001)).  While Plaintiffs are correct that females are now eligible for combat positions, *see* ECF

26   No. 31 at 12, that does not vitiate *Rostker*'s binding effect on this Court.  Indeed, in a similar case

27   to the one at hand, the Fifth Circuit explicitly declined to "disregard [the Supreme Court's

28   decision in *Rostker*] as to the constitutionality of the [2017 National Defense Authorization Act]

United States District Court
Northern District of California

because some key facts [namely, the ban on women in combat] implicated in the Supreme Court's decision have changed." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 550 (5th Cir. 2020).

The losing plaintiff in *National Coalition for Men* filed a petition for certiorari in the Supreme Court, but the Court also denied the petition and declined to the invitation to revisit *Rostker*. The Court noted that even though "[t]he role of women in the military has changed dramatically since [*Rostker*]," "the Court's longstanding deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 141 S. Ct. 1815, 1816 (2021) (Sotomayor, J., respecting the denial of certiorari).

One might reasonably conclude that "[s]eemingly outworn normative judgments" underlay the institution of the male-only draft. Daniel B. Rice, *Repugnant Precedents and the Court of History*, 121 Mich. L. Rev. 577, 617 (2023). "Beginning in 1991, thousands of women have served with distinction in a wide range of combat roles, from operating military aircraft and naval vessels to participating in boots-on-the-ground infantry missions." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 141 S. Ct. at 1816 (Sotomayor, J., respecting the denial of certiorari). Because this Court is bound by decisions of the Supreme Court, however, the Court dismisses Plaintiff's claim. Because amendment would be futile, the claim is dismissed with prejudice. *See Leadsinger, Inc.*, 512 F.3d at 532.

## CONCLUSION

For the foregoing reasons, the Court grants the Selective Service's motion to dismiss. Because the Court finds that amendment of Plaintiffs' claims would be futile, their claims are now dismissed with prejudice.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: November 20, 2024

_____
JON S. TIGAR
United States District Judge